

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-2006

# Beck v. Maximus Inc

Precedential or Non-Precedential: Precedential

Docket No. 05-3530

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Beck v. Maximus Inc" (2006). *2006 Decisions.* Paper 536.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/536

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 05-3530

————————

DONNA M. BECK,
ON BEHALF OF HERSELF AND ALL
OTHERS SIMILARLY SITUATED

v.

MAXIMUS, INC.,
                                Appellant

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 04-cv-02199
(Honorable Edmund V. Ludwig)

————————

Argued April 27, 2006

Before:  SCIRICA, *Chief Judge*,
NYGAARD and ALARCÓN[*], *Circuit Judges*

(Filed August 4, 2006 )

JAMES A. KELLER, ESQUIRE (ARGUED)
JAMES F. KILCUR, ESQUIRE
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
        Attorneys for Appellant

JAMES A. FRANCIS, ESQUIRE (ARGUED)
Francis & Mailman, P.C.
Land Title Building
100 South Broad Street, 19th Floor
Philadelphia, Pennsylvania 19110

DAVID A. SEARLES, ESQUIRE
Donovan Searles, LLC
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania 19103
        Attorneys for Appellee

---

[*]The Honorable Arthur L. Alarcón, United States Circuit
Judge for the Ninth Judicial Circuit, sitting by designation.

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

In this consumer class action against a debt collector, the issue on appeal is whether the District Court erred in certifying a class when defendant asserted a defense unique to the claims of the class representative. We will vacate and remand.

## I.

Maximus, Inc. has a contract with the U.S. Department of Education to collect overdue student loans. Between May 20, 2003, and May 20, 2004, Maximus sent a form collection letter entitled "Employment Verification Request" to the employers of 776 Pennsylvania individuals. The Employment Verification Request displayed "MAXIMUS Collection Center" in boldface type at the top and bottom of the page and requested information about the individual's location and employment. On May 28, 2003, Maximus sent an Employment Verification Request to appellee Donna M. Beck's employer, Inolex Chemical Company.

Beck did not have an outstanding loan with the Department of Education. Maximus had confused her with another woman, with the same name, who lived in the same Philadelphia neighborhood. The two women had a history of

3

being mistaken for one another. They had been confused on voter registration rolls, and their credit histories had been mixed up by the credit information service that provided Maximus with employment information.

Before sending the Employment Verification Request, a Maximus representative telephoned Inolex at least twice, attempting to reach Beck. On one call, Inolex's human-resources department informed the Maximus representative that, based on the social security number he provided, the debtor "Donna M. Beck" did not work there. The Maximus representative responded by contending Beck must be using two different social security numbers. Notified of the inquiries, Beck called Maximus to clarify she was not the debtor in question. She also contacted the other Donna M. Beck, met her in person, and established she had an outstanding debt with the Department of Education. After this meeting, neither woman contacted Maximus to clarify the situation. Beck testified that when she saw the Employment Verification Request, she knew it was intended for the other Donna M. Beck and was sent to Inolex in error.

On May 20, 2004, Beck filed a complaint in the District Court, alleging Maximus violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692b, 1692c, 1692d, 1692e, and 1692f. The Fair Debt Collection Practices Act is intended to protect both debtors and non-debtors from misleading and abusive debt-collection practices. *See* § 1692(e). Among other things, the Act expressly prohibits "[a]ny debt collector

4

communicating with any person other than the consumer" from "stat[ing] that such consumer owes any debt," § 1692b(2), and from "indicat[ing] that the debt collector is in the debt collection business or that the communication relates to the collection of a debt," § 1692b(5). The complaint alleged Maximus violated the Act by sending Beck's employer a form collection letter, which improperly identified the sender as a collection agency and implied the existence of a debt.

Section 1692k(c) of the Act offers a defense to a debt collector whose violation results from a bona fide error. It provides:

> A debt collector may not be liable in any action under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

15 U.S.C. § 1692k(c).

Beck filed a motion for class certification of 776 consumers in Pennsylvania whose employers received an Employment Verification Request from Maximus. Maximus responded it had a defense to Beck's claims under § 1692k(c) because it made a bona fide error on the identity of the debtor "Donna M. Beck." Maximus contended this defense, unique to Beck's claims, precluded Beck from being an adequate

5

representative with claims typical of the class. After the District Court denied Maximus's motion to dismiss the class allegations, Maximus filed an answer to the complaint, again contending it had a defense to Beck's claims under § 1692k(c).

Maximus designated two corporate witnesses under Fed. R. Civ. P. 30(b)(6)—the project manager who oversaw student loan collection, and the collection supervisor in charge of assuring compliance with the Fair Debt Collection Practices Act. At depositions prior to class certification, these witnesses explained the Employment Verification Request was a standard form letter, drafted by Maximus. It was used to verify whether a given debtor worked for the employer Maximus had listed in its records. The witnesses testified Maximus had no specific procedures governing use of Employment Verification Requests. They also testified that sending the Employment Verification Request to Beck's employer did not violate any established policy, and that it was not uncommon to send Employment Verification Requests to the wrong employer.

Following oral arguments, the District Court certified a class consisting of all individuals in Pennsylvania to whose employer Maximus had sent an Employment Verification Request on or after May 20, 2003. The District Court designated Beck as class representative and the law firms of Francis & Mailman, P.C., and Donavan and Searles, LLC, as class co-counsel.

6

In its "findings of facts" supporting class certification under Fed. R. Civ. P. 23(a),[1] the District Court noted neither numerosity nor commonality was in dispute. Numerosity was shown by the existence of 776 class members, and commonality was satisfied because "[t]he principal question is whether defendant violated the Fair Debt Collection Practices Act by sending an 'Employment Verification Request' or a substantially same form to the person's employer(s) on or after the applicable date." (App. 4a.) The court concluded typicality was satisfied because "[t]he claims of plaintiff Donna M. Beck are typical of the claims of the Class." (*Id.*) In a footnote, the court rejected Maximus's contention that Beck was atypical because her claims were subject to a unique defense. The court stated:

> [D]efendant says that sending the EVR to plaintiff's employer was the result of a bona fide error and defensible. Plaintiff counters that it is irrelevant whether the communication was in error, because the violation—the prohibited language included in all EVRs—was not an error. Plaintiff cites deposition testimony of two representatives of defendant that (1) defendant drafted the language of the EVR, (2) there was no

_____

[1]In deciding whether to certify a class, a court must first determine whether the proposed class satisfies the four requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy.

7

specific procedure for sending EVRs, and (3) it was not uncommon for EVRs to be sent to employers for whom debtors did not work. Given this evidence, the EVR does not appear to have been sent to Ms. Beck's employer in error, and she will not be disqualified from representing the class on this basis.

(App. 4a n.4 (internal citations to District Court record omitted).) The court concluded adequacy of representation was also satisfied, noting Beck "retained qualified counsel, appeared for deposition, and verified answers to interrogatories." (App. 5a n.5.) The District Court concluded the class could be maintained under Rules 23(b)(1), (b)(2), and (b)(3). The court did not acknowledge Beck had previously withdrawn her request for certification under Rule 23(b)(2).

Maximus petitioned for an interlocutory appeal under Fed. R. Civ. P. 23(f), which we granted. Maximus contends if it prevails on its bona fide error defense, Beck will be precluded from recovery on the class's claims. In its view, the District Court abused its discretion in concluding Beck was a typical and adequate class representative, and in certifying the class. Beck responds her interests are aligned with those of the class. That she was not the "Donna M. Beck" referred to in the Employment Verification Request, she contends, is a factual variation that does not create a conflict of interest between her and the class, and does not render her inadequate or atypical as a class representative.

8

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1292(e). We review a district court's decision to certify a class for abuse of discretion. *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 299 (3d Cir. 1998). A district court abuses its discretion if its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (quoting *In re Ge. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 783 (3d Cir. 1995)). A finding of fact is "clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Igbonwa,* 120 F.3d 437, 440 (3d Cir. 1997) (quotations omitted).

## III.

### A.

To evaluate typicality, we ask "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). "'[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'" *Id.* at 58 (quoting *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912,

9

923 (3d Cir. 1992)). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). It "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Baby Neal*, 43 F.3d at 55.

The Supreme Court has noted the typicality and adequacy inquiries often "tend[] to merge" because both look to potential conflicts and to "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[2] *Amchem*, 521 U.S. at 626 n.20 (quoting *Gen. Tel. Co. Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982)). Because of the similarity of these two inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both.

Maximus contends its alleged bona fide error defense renders Beck neither typical nor adequate as a class

---

[2]Nevertheless, a court should address each Rule 23(a) factor in a certification decision. Despite areas of overlap, each factor involves distinct considerations. The adequacy inquiry, for example, "factors in competency and conflicts of class counsel," *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626 n.20 (1997), which the typicality requirement does not.

10

representative. Beck disputes that the alleged defense renders her atypical, but does not address its effect on her adequacy of representation. The District Court also addressed the issue exclusively in terms of typicality. We believe the alleged unique defense is relevant under both inquiries. Accordingly, we will address both the typicality and adequacy requirements of Rule 23(a).

Courts of appeals have held that unique defenses bear on both the typicality and adequacy of a class representative. *See, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990) ("Regardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representative."). Commentators agree. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1764 (3d ed. 2005) (noting securities class actions in which a unique defense defeated typicality); *id.* at § 1765 (citing cases in which a unique defense defeated adequacy of representation)*;* 5 James Wm. Moore et

al., Moore's Federal Practice § 23.24[5] (3d ed. 2006) (typicality); *id.* at § 23.25[2][b][iv] (adequacy of representation).

Other courts of appeals emphasize, as do we, the challenge presented by a defense unique to a class representative—the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class. *See, e.g., Gary Plastic Packaging,* 903 F.2d at 180 ("[T]here is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *see also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992); *J.H. Cohn & Co.*, 628 F.2d at 999. A class representative should "not be permitted to impose such a disadvantage on the class." *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1165 (7th Cir. 1974).

**B.**

District courts have discretion under Rule 23 to certify a class. *See Califano v. Yamasaki,* 442 U.S. 682, 703 (1979). But a trial court must clearly articulate its reasons, in part, so we can adequately review the certification decision on appeal under Rule 23(f). Under Rule 23(c)(1)(B), the trial court must "include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment." *Wachtel v. Guardian Life Ins. Co. of America,* No. 04-4304, slip op. at 14 (3d Cir. June 30, 2006).

12

A class may be certified only if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon,* 457 U.S. at 161. In addition, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). Depending on the circumstances, class certification questions are sometimes "enmeshed in the factual and legal issues comprising the plaintiff's cause of action," and "courts may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001) (quotations omitted).

Here, we have difficulty discerning the District Court's reasons for concluding Beck was a typical and adequate class representative. We note two problems in particular. First, we are unclear whether the court concluded the alleged violation was based on the content of the Employment Verification Request or on the transmission of the form to third-party employers. This issue, which the parties contest, is central to a proper certification analysis in this case. Second, we are unclear whether the court considered the three requirements of a successful bona fide error defense in concluding that the Employment Verification Request had not been sent to Inolex in error, and that Beck should not be disqualified on these grounds as a class representative. Because these two issues are closely related, we address them together.

To qualify for the bona fide error defense under the Fair Debt Collection Practices Act, a defendant's alleged violation of the Act must have been "unintentional" and must have "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c). Accordingly, to avail itself of the defense, Maximus will have to establish: (1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors. *See Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006); *Kort v. Diversified Collections Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

Beck contends the alleged violation resulted from the content of the Employment Verification Request. She explains the "standardized language" of the form gave rise to identical claims on behalf of each class member, and concludes "[w]hether the language of the EVR violates the [Act] is the common overarching issue in this case."[3] (Appellee's Br. 11.)

_____

[3]At some points in her brief, Beck concedes the importance of the communication of the Employment Verification Request. She states, "[t]ypicality was satisfied because all the claims are based on the sending of the improper EVR form to third-party employers." (Appellee's Br. 12.) And in contending her interests were aligned with those of the class, she states, "Maximus sent the EVR to Ms. Beck's employer just as it sent the same EVR to Class members' employers." (Appellee's Br.

14

Maximus takes the opposite position—that the transmission and not the content of the Employer Verification Request gave rise to the class's claims. Maximus contends a debt collection letter's content alone cannot violate the Fair Debt Collection Practices Act, and it is only when the content is communicated to a consumer or a third party that a violation can occur.

The District Court appears to have adopted each party's position at different points in its analysis.[4] In the text of the opinion, the court focused on the form's transmission, articulating the principal "question[] of law or fact common to the class" as "whether defendant violated the Fair Debt Collection Practices Act by sending an 'Employment Verification Request' or a substantially same form to the person's employer(s) on or after the applicable date." (App. 4a.)

15.)

[4]The District Court briefly noted the parties's respective positions in footnote four, stating:

> [D]efendant says that sending the EVR to plaintiff's employer was the result of a bona fide error and defensible. Plaintiff counters that it is irrelevant whether the communication was in error, because the violation—the prohibited language included in all EVRs—was not an error.

(App. 4a n.4 (internal citations to District Court record omitted).)

15

This is Maximus's position. But in footnote seven, the court adopted Beck's contrary position, focusing on the form's content as the basis of the violation. The court stated, "[i]t is undisputed that the dispositive issue is whether the display of 'MAXIMUS Collection Center' at the top and bottom of the EVR violated the [Act]." (App. 5a n.7.)

The difference between the parties' positions is central to determining whether Maximus could possibly establish the three requirements of a bona fide error defense, and possibly defeat Beck's typicality and adequacy as a class representative. The record demonstrates the drafting of the Employment Verification Request was neither unintentional nor the result of a bona fide error under the first two requirements of the defense. Maximus's witnesses testified—and Maximus concedes—that Maximus drafted the form's language. But the transmission of the form to Beck's employer, Inolex, may have been both unintentional and the result of a good faith, bona fide error on the identity of the debtor "Donna M. Beck." Maximus relied on a credit agency that reported the debtor Beck worked for Inolex. At issue is whether Maximus was aware this information was incorrect.[5]

---

[5]Maximus was arguably alerted to its mistake when Inolex's human resources department informed a Maximus representative that Inolex did not employ the debtor "Donna M. Beck." But at oral argument, Maximus explained it is often informed a person for whom it is looking is not located or employed at a certain

16

If the error resulted from the transmission of the form, and if Maximus can establish the third requirement of the defense—adequate procedures to avoid such errors—Maximus may have a bona fide error defense that might defeat Beck's typicality and adequacy. The District Court did not address this possibility. Rather, it concluded "[b]ased on this evidence, the EVR does not appear to have been sent to Ms. Beck's employer in error." (App. 4a.) This conclusion does not follow from the evidence the court cited, which constitutes the entirety of the court's analysis.[6]

The court cited testimony that Maximus had no procedures in place governing the sending of Employment Verification Requests. It did not address Maximus's contention that Maximus "provided written materials, training, and seminars to its employees about the pertinent provisions of the

_____

place. Maximus contended if it were to believe every such statement, it would be entirely unsuccessful in the debt collection business.

[6]The District Court cited testimony that: (1) Maximus drafted the Employment Verification Request's language; (2) Maximus had no specific procedures governing the sending of Employment Verification Requests; and (3) it was not uncommon for Maximus to send Employment Verification Requests to employers for whom the debtor in question did not work.

17

[Fair Debt Collection Practices Act]," (Reply Br. 3), nor did it acknowledge a Maximus employee's testimony that through "[s]eminars, lectures and materials and testing," (App. 262a), Maximus provided "continuous training." (App. 264a.)

At oral argument on appeal, Maximus conceded it had no procedures in place "reasonably adapted to avoid" the specific error that occurred here—a confusion between two individuals with the same name. But it contends the "'reasonable procedures' must be directed at addressing the enumerated [Fair Debt Collection Practices Act] violation (here, improper communication with a third party), not the exact act (here, sending a unique type of EVR form)." (Reply Br. 2.) Maximus cites *Kort v. Diversified Collections Services, Inc.* for the proposition that the bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors," but rather "requires reasonable precaution." 394 F.3d at 539; *see also Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (explaining a debt collector could have done more to prevent the specific error, but "§ 1692k(c) only requires collectors to adopt reasonable procedures" to avoid errors under the Fair Debt Collection Practice Act). The District Court did not consider whether Maximus's training materials were reasonably designed to avoid violations of the Fair Debt Collection Practices Act, sufficient to establish a bona fide error defense.

We are unable to conclude whether the District Court exercised its sound discretion in certifying the class with Beck

18

as the class representative. The court should have (1) distinguished between a violation based on the content of the Employment Verification Request and a violation based on its transmission, and (2) addressed the three requirements of the bona fide error defense. We will vacate the certification order and remand for further consideration by the District Court, consistent with this opinion.

## C.

Maximus contends the District Court erred by applying the wrong standard in determining whether its alleged bona fide error defense defeated class certification. It contends the court required it to prove the defense in order to disqualify Beck as the class representative. We are unclear what standard the District Court applied in concluding the defense did not render Beck atypical or inadequate.

To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial. If a court determines an asserted unique defense has no merit, the defense will not preclude class certification. *See, e.g.*, *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994).

In *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir. 1976), we addressed what a defendant must demonstrate to defeat class certification through a defense unique to the class representative. Bulk purchasers of a patented drug brought an action to recover royalties after discovering the patent had been obtained fraudulently. 530 F.2d at 510. In

19

affirming the district court's holding that a unique defense defeated the adequacy of the putative class representative (Zenith), we explained,

> If Zenith were allowed to represent the alleged class, Carter could assert defenses against it which would not be applicable to the class as a whole, such as res judicata based on the disposition of Zenith's counterclaims in the earlier suit. Since these unique defenses could conceivably become the focus of the entire litigation and divert much of Zenith's attention from the suit as a whole, the remaining members of the class could be severely disadvantaged by Zenith's representation.

*Id*. at 512 (citing *Koos*, 496 F.2d at 1164–65).

Several of our sister courts of appeals have addressed this issue and articulated standards under which certification is improper if the defense might become a "focus" or a "major focus" of the litigation. *See, e.g., Hanon,* 976 F.2d at 509 ("[I]t is predictable that a major focus of the litigation will be on a defense unique to [the class representative]. Thus, [the class representative] fails to satisfy the typicality requirement of Rule 23(a)."); *Gary Plastic Packaging,* 903 F.2d at 180 ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."); *Koos,* 496 F.2d at 1164

20

(7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.").

We note that these cases set forth standards, while *Zenith* appears to describe the defense at issue. Nonetheless, to the extent *Zenith* does prescribe a standard, we believe it is substantially similar to the standards set forth by our sister courts of appeals. Though phrased slightly differently, they all ask whether it is predictable that the unique defense will play a major role in the litigation. Where a defense "could conceivably become the focus of the entire litigation," *Zenith*, 530 F.2d at 512, it also "threaten[s] to become the focus of the litigation." *Gary Plastic Packaging,* 903 F.2d at 180. It is also "predictable" that the defense will be "a major focus of the litigation," *Hanon,* 976 F.2d at 509; *Koos,* 496 F.2d at 1164. We note that *Zenith* cites *Koos,* which articulates the standard as disqualifying a named plaintiff "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff." *Koos,* 496 F.2d at 1164. Despite some variations in language, we believe all of these cases set forth standards that are, in substance, the same.

In articulating a single standard, we align ourselves with our sister courts of appeals. A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation. We believe this standard strikes the proper balance

21

between protecting class members from a representative who is not focused on common concerns of the class, and protecting a class representative from a defendant seeking to disqualify the representative based on a speculative defense.

**D.**

In addition to satisfying the requirements of Rule 23(a), parties seeking class certification must establish the class is maintainable under one of the categories of Rule 23(b). *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 527. Each category of Rule 23(b) has different purposes and different requirements.

Rule 23(b)(1) authorizes the use of class actions when necessary to prevent potentially adverse effects of separate actions. Subsection (b)(1)(A) addresses possible prejudice to the party opposing the class and is intended to eliminate the possibility of separate actions imposing inconsistent courses of conduct on the defendant. Subsection 23(b)(1)(B) addresses possible prejudice to members of the proposed class, and applies if individual actions "would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." 7AA Wright et al., *supra*, § 1774 (citation omitted).

Rule 23(b)(2) authorizes class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). This rule applies when the putative class seeks injunctive or declaratory relief, and "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) advisory committee's note.

Rule 23(b)(3) authorizes class certification when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Class actions certified under Rule 23(b)(3) are subject to specific notice and opt-out requirements. *See* Fed. R. Civ. P. 23(c)(2)(B).[7]

Here, the District Court certified the class under Rules 23(b)(1), 23(b)(2), and 23(b)(3). But it did not provide its

---

[7]Fed. R. Civ. P. 23(c)(2)(B) provides, in part:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state . . . that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded.

23

reasons for doing so. It did not distinguish between the two subsections of Rule 23(b)(1), nor did it acknowledge that Beck withdrew her request for Rule 23(b)(2) certification in light of our decision in *Weiss v. Regal Collections*, 385 F.3d 337, 341–42 (3d Cir. 2004), holding declaratory and injunctive unavailable under the Fair Debt Collection Practices Act.

We cannot discern why the District Court certified the class under all categories of Rule 23(b). We note the conflict between certification under Rules 23(b)(1) and (b)(2)—which is binding on all class members—and under Rule 23(b)(3)—which allows class members to opt-out. On remand, the District Court should further reconsider the class certification issues and set forth its reasoning.

## IV.

For the reasons set forth, we will vacate the order certifying the class and remand to the District Court for further proceedings consistent with this opinion.